UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RANDY L. MCKELLAR, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No. 4:11CV737JCH |
| | ) | |
| MICHAEL BOWERSOX, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Before the Court is the Second Amended Petition under 28 U.S.C. § 2254 for Writ of

Habeas Corpus by a Person in State Custody filed by Randy L. McKellar (Petitioner).  (ECF No.

31).  The matter is fully briefed and ready for disposition.[1]

## I.
## BACKGROUND

In 2005, Petitioner was charged with knowingly killing Trevor Neal by shooting him.

Specifically, Petitioner was charged with felony murder in the first degree and armed criminal

action in relation to Mr. Neal's murder.  The testimony at Petitioner's trial was as follows.[2]

Several months prior to the murder at issue, Petitioner was shooting dice with Mr. Neal, Kevin

---

[1] Respondent filed a Response to Order to Show Cause after Petitioner filed his initial § 2254 petition and an Amended Petition.  (ECF Nos. 1, 5, 13).  Pursuant to the Court's Orders (ECF Nos. 20, 24), Petitioner filed a new Amended Petition which excluded his unexhausted and defaulted claims (ECF No. 26).  Respondent's Response to Order to Show Cause addresses all claims raised by Petitioner in his most recently filed § 2254 petition.

[2] Under Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(e)(1), federal habeas court is compelled to apply rebuttable presumption of correctness to state court's factual findings.  See Hall v. Luebbers, 341 F.3e 706, 712 (8th Cir. 2003).  Also, Petitioner's first trial was declared a mistrial. Missouri v. McKeller, 256 S.W.3d 125, 126 n.5 (Mo. Ct. App. 2008).

Weakley, and a man referred to as "Antwon from Memphis" (Antwon), after which Petitioner

was apparently robbed by Antwon.  Petitioner became angered and declared that "he was going

to get all three of them because they w[ere] cousins."  After Antwon died in a car accident

several weeks later, Petitioner again threatened Mr. Neal by telling him that he was "going to put

[Mr. Neal] where [Antwon] was."  About the same time, Petitioner told another of Mr. Neal's

cousins, Mr. Hunt, about his dispute with Mr. Neal, and Mr. Hunt warned Petitioner not to bring

the issue "to another level."  (Resp. Ex. K at 2-3).  Additionally,

> Thereafter, during the week of the shooting, [Petitioner] was involved in a
> dispute with Mr. Neal and another of Mr. Neal's cousins, Dion Savage ("Mr.
> Savage").  During this incident, Mr. Neal knocked [Petitioner] out by punching
> him in the mouth.  Several days later, [Petitioner] and his friend Justin Robinson
> ("Mr. Robinson"), were playing basketball when Mr. Robinson made the
> following comment to a group of people about Mr. Neal:  "yeah, y'all see what he
> did to [Petitioner], but that's okay, because I got this [gun] for that boy . . . ."  . . .
> Mr. Robinson then "patted on his waist on his gun" while [Petitioner] "nodd[ed]
> and grin[ed].

> Then on May 23, 2003, Mr. Robinson and [Petitioner] were with a group
> of people on the street when Mr. Neal arrived.  Mr. Robinson, who was standing
> beside [Petitioner] with a pistol visible in his pocket, told Mr. Neal that they were
> "going to get [him].  The parties then parted ways without an altercation.  At
> around 2:30 a.m. in the early morning of May 24, 2003, Brandon Johnson ("Mr.
> Johnson") was driving a van with Sharron McGee ("Ms. McGee"), Samantha
> Davis ("Ms. Davis"), a man named Eli, Rico Brown, and Mr. Neal as passengers.
> As the van drove down Dixie Street in Sikeston, Mr. Robinson, who had been
> standing on the street with [Petitioner], stopped the van and asked the occupants if
> any of them had any marijuana.  When Mr. Robinson saw Mr. Neal in the van, he
> reached inside the van, pulled the keys from the ignition, opened the door, pulled
> his gun out and ordered everyone to "[g]et . . . out of the van, get the hell out of
> the van."  When Mr. Neal refused to exit the vehicle, Mr. Robinson held the gun
> toward him and ordered him to get out of the van again.  Mr. Neal then jumped
> out of the window of the van and took off running down the street.  Mr. Robinson
> pursued Mr. Neal and [Petitioner] began chasing after both of them.  At some
> point in the chase, Mr. Robinson threw the gun down and continued the pursuit of
> Mr. Neal.  [Petitioner] retrieved the gun and continued running.  Mr. Robinson
> then caught Mr. Neal, tackling him to the ground, and the two began scuffling and
> rolling around.  Mr. Robinson began yelling for [Petitioner], who approached with
> the gun in his hand.  [Petitioner] then said "[f]uck it" and shot Mr. Neal one time.

> Both Mr. Robinson and [Petitioner] then took off running.  Mr. Neal later died in the hospital.

(Resp. Ex. K at 2-4).

The jury convicted Petitioner as charged, and the court sentenced him, as a prior offender, to life in prison without the possibility of parole on the murder charge and thirty years in prison for the armed criminal action, with the sentences to run concurrently.  Petitioner filed a direct appeal.  (Resp. Ex. C).  The Missouri appellate court found Petitioner's arguments without merit and affirmed the judgment against him.  Missouri v. McKeller, 256 S.W.3d 125 (Mo. Ct. App. 2008).

In June 2008, Petitioner filed a Rule 29.15 pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence.  (Resp. Ex. G at 4-94).  Counsel was appointed and filed an amended Rule 29.15 motion.  (Resp. Ex. G at 95, 99-147).  Following an evidentiary hearing, the motion court denied the amended motion.  (Resp. Ex. G at 148-60).  Petitioner appealed the motion court's denial of his amended Rule 29.15 motion, and the Missouri appellate court affirmed. (Resp. Ex. G).

In his § 2254 motion, Petitioner makes the following claims:  (1) the trial court erred in allowing Robinson to invoke the Fifth Amendment; (2) the trial court erred in permitting Casey Blackmon to testify about what Robinson said prior to Mr. Neal's being shot; (3) Petitioner's counsel[3] was ineffective for failing to object to trial court error in sustaining an objection to the admission of Blackmon's "written statement into evidence in its entirety as an exhibit for the jury to view during deliberations"; (4) Petitioner's counsel was ineffective for failing to challenge venire persons Susan Hubbard and Darla Carlyle; (5) the prosecutor deliberately used

---

[3] At trial petitioner was represented by Derrick Williams and Reginald Willigby.  For purposes of Petitioner's Section 2254 Petition the court will not differentiate between counsel, unless otherwise necessary.

Blackmon's and Hunt's perjured testimony; (6) Petitioner's counsel was ineffective for failing to object to Savage and Blackmon's hearsay testimony; and (7) Petitioner's counsel was ineffective for failing to investigate promises of leniency to Johnson and Hunt.  (ECF No. 31).

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326–29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).   "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782–83 (8th Cir.2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir.2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir.2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. § 2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir.2001) (holding that in the absence of

controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In <u>Williams</u>, 529 U.S. 362, the Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that " § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." <u>Id.</u> at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 412–13.

The Court further explained in <u>Williams</u> that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness."  Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001).  The state court's factual determinations "must be rebutted by clear and convincing evidence."  King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record."  Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003).

**III.**
**STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL**

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir.1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

- 6 -

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice.  Id. at 697.  To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 669.  The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]."  Id. at 697.

Additionally, the Court notes that the Supreme Court stated in Strickland, 466 U.S. at 688–89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4– 1.1 to 4–8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

Judicial scrutiny of counsel's performance is highly deferential, and a reviewing court may not second-guess counsel's decisions.  Rather, the reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  Id. at 89.

## IV.
## DISCUSSION

**Ground 1:**  Petitioner claims trial court error in permitting Robinson to invoke the Fifth Amendment.  Petitioner argues the trial court erred in permitting Robinson, who was also charged with having murdered Mr. Neal, to invoke his Fifth Amendment privilege against self-

incrimination and in allowing Officer Bobby Sullivan to read into evidence Robinson's testimony at Petitioner's first trial which had been declared a mistrial.  Petitioner further argues these errors prevented him from presenting a complete defense and from confronting the witness, and that Robinson had previously waived his Fifth Amendment right by testifying at a pre-trial deposition, at his own trial, and at Petitioner's first trial.  (ECF No. 31 at 17-19).

As stated by the Missouri appellate court in Petitioner's direct appeal, at the start of Petitioner's trial, while the jury was removed from the courtroom, the State called Robinson. During the inquiry which followed, Robinson testified that he did not wish to testify in Petitioner's case "at all," in part because the appeal in his case was pending.  After inquiries by Petitioner's counsel, the trial court found that, "upon advice of counsel, [Robinson] exercised his rights under the 5th Amendment to not incriminate himself," and discharged Robinson as a witness.  Near the end of the State's case it called Detective Bobby Sullivan as a witness. Detective Sullivan read Robinson's testimony from Petitioner's first trial.  This testimony included what Petitioner told Robinson about being robbed and described what happened on May 24, 2003, when Mr. Neal was killed.  McKeller, 256 S.W.3d at 126-27.

Upon finding the claim of Petitioner's Ground 1 without merit, the Missouri appellate court held:

> The privilege against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and Article I, section 19 of the Missouri Constitution. The privilege protects an individual from being an involuntary witness against himself in any proceeding, criminal or civil, formal or informal, where his answers might incriminate him in future criminal proceedings. State ex rel. Munn v. McKelvey, 733 S.W.2d 765, 768 (Mo. banc 1987). The privilege extends not only to answers that would completely reveal guilt of a crime, but also to questions whose answers might reveal facts which could be a link in a chain of evidence connecting him to a crime. Id.; State ex rel. Flynn v. Schroeder, 660 S.W.2d 435, 437 (Mo. App. 1983).

State v. Carey, 808 S.W.2d 861, 865 (Mo.App.1991). In order to receive 5th Amendment protection, one desiring to avail himself of the privilege it affords must claim that protection. Rogers v. U.S., 340 U.S. 367, 370–71, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

Robinson had testified in other proceedings concerning facts relative to the subject about which inquiry was made in this case. However, the 5th Amendment privilege applies to the particular proceeding in which it is claimed. The fact that a witness who claims its protection had previously testified in a different trial or another hearing is not a waiver in a subsequent trial. See 8 Wigmore, Evidence, § 2276, p. 136 (1991 Supp.). See also, Galloway v. Commonwealth, 374 S.W.2d 835, 836 (Ky.1964).

Id. at 127-28.

The Missouri appellate court also found that Robinson was entitled to claim 5th Amendment protection because the case in which Robinson was found guilty was still on appeal at the time his testimony was sought in Petitioner's case. On reaching this conclusion the Missouri appellate court noted that "there is no unanimous agreement that the right to claim 5th Amendment protection continues following conviction until any appeal is resolved," but relied on the Eighth Circuit's holding in United States v. Duchi, 944 F.2d 391, 394 (8th Cir.1991), that:

The better rule [] appears to be that the Fifth Amendment right not to testify concerning transactions for which one has been convicted continues until the time for appeal has expired or until the conviction has been affirmed on appeal. See, e.g., Frank v. United States, 347 F.2d 486, 491 (D.C. Cir.1965) ("Government may not convict a person and then, pending his appeal, compel him to give self-accusatory testimony relating to the matters involved in the conviction"); Mills v. United States, 281 F.2d 736, 741 (4th Cir. 1960) (witness may claim privilege as long as time for appeal from conviction has not expired).

McKeller, 256 S.W.3d at 128.

The Missouri appellate court further reasoned that Robinson was unavailable to testify at Petitioner's trial because he asserted his Fifth Amendment privilege; because Robinson had

testified at Petitioner's earlier trial for the same offense and had been subject to cross-examination by Petitioner, the prior testimony was admissible at the second trial.  Id.

As required by federal law for testimonial evidence to be admissible, Petitioner had an opportunity, at his first trial, to cross-examine Robinson regarding the matters about which Detective Sullivan testified.   See Crawford v. Washington, 541 U.S. 36, 53-54 (2004) (testimonial statements of witness who did not appear at trial are not admissible unless the witness was unavailable to testify, and defendant had had prior opportunity for cross-examination); see also United States v. Richardson, 537 F.3d 951, 959 (8th Cir. 2008) (admissible testimonial evidence includes prior testimony at former trial where testimony was subject to cross-examination).  Further, according to Eighth Circuit precedent, Robinson had a valid basis for asserting the Fifth Amendment.  See Duchi, 944 F.2d at 394.  The court finds, therefore, that the decision of the Missouri appellate court in regard to Petitioner's Ground 1 is not contrary to federal law and that the court reasonably applied of federal law to the facts of Petitioner's case. See Williams, 529 U.S. 362.

**Ground 2:**  Petitioner claims trial court error in permitting Blackmon to testify about what Robinson said prior to the shooting, specifically that he had "his nine for that boy," referring to Mr. Neal, and then patting the gun on his waist.  (ECF No. 31 at 20).  As stated by the Missouri appellate court, "Casey Blackmon had known [Petitioner] and Justin Robinson for 'a lot of years'; 'forever.'"  McKeller, 256 S.W.3d at 129.  She further testified that prior to Mr. Neal's being shot, she was on the basketball court with some her friends, including Johnson and Petitioner.  Petitioner was sitting down, and she could tell that Johnson "was mad because his lip was busted."  Defense counsel objected to this line of questioning as hearsay, and the court overruled the objection.  Blackmon continued to testify that Johnson then said, "yeah, y'all see

what he did to my boy, referring to [Petitioner], he was like, but that's okay, because I got this 9 for that boy, and he pointed, he patted on his waist on his gun." Blackmon said that while Johnson was "making these statements," Petitioner was "just sitting there," "he wasn't saying anything, he was just nodding," "nodding and grinning."  Id.

Upon finding without merit Petitioner's argument that Blackmon's statement was inadmissible hearsay, Missouri appellate court held:

> [Blackmon's testimony] was not the only evidence that Justin Robinson told defendant that Robinson had a weapon he planned to use on Trevor Neal. Defendant testified in his own defense. He was asked in direct examination by his attorney about events that occurred at a time before the shooting when Casey Blackmon was present. Defendant said he thought the time "was close to the shooting."  Defendant was asked if he told Casey Blackmon that he was going to kill Trevor.  Defendant answered, "No, sir.  Justin tells Ms. Blackmon he was going to kill Trevor. He didn't say he was going to kill him, he just said he had his pistol and he was going to off his pistol, that was it."

> Had it been error to admit Ms. Blackmon's testimony, a finding this court need not and does not make, no prejudice or reversible error occurred in that other evidence was admitted that established the same fact; that the statement in question was made. See State v. Zagorski, 632 S.W.2d 475, 480 (Mo. banc 1982). Point III is denied.

McKeller, 256 S.W.2d at 130.

First, the Court finds, in agreement with Respondent, that Petitioner's Ground 2 is not cognizable pursuant to federal habeas review, as Petitioner merely challenges a State court ruling concerning State evidentiary rules.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal habeas relief does not lie for errors of state law); Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990) (because admission or exclusion of evidence is primarily state law question, evidentiary determination rarely gives rise to federal question reviewable in habeas petition).  Second, as explained by the Missouri appellate court, Petitioner was not prejudiced as a result of the allegedly objectionable testimony because there was other testimony that Robinson told

- 11 -

Petitioner that he had a weapon he planned to use against Mr. Neal.  See Sweet v. Delo, 125 F.3d

1144, 1157-58 (8th Cir. 1997) (exclusion of evidence violates due proves if "the asserted error

was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and

deprived [petitioner] of fundamental fairness").  The Court alternatively finds, therefore, that the

decision of the State court regarding Petitioner's Ground 2 is not contrary to federal law and it is

a reasonable application of federal law to the facts of Petitioner's case.  See, 529 U.S. 362.

**Ground 3:**  Petitioner claims counsel was ineffective for failing to object to trial court

error in sustaining an objection to the admission of Blackmon's "written statement into evidence

in its entirety as an exhibit for the jury to view during deliberations."  He also argues counsel

should have included this issue in the motion for a new trial. (ECF No. 31 at 20-21).

The trial transcript reflects that the prosecutor asked Blackmon about her talking to

Detective Blakely after the shooting.  She testified to the following.  She did speak with

Detective Blakely and told him she knew the two people who were involved – that was "about

it."  She did not give the detective all the information she had because she was scared of

retaliation.  (Resp. Ex. A at 206-207).  Defense counsel then elicited testimony from Blackmon

that after the shooting she wanted to help Detective Blakely find whoever was responsible for the

shooting; Detective Blakely typed and printed out questions for her on the computer; she signed

document; and in the written statement she "never mentioned on the day of the shooting . . . that

[Petitioner] was holding a gun, [she] never mentioned that [Petitioner] shot [Mr. Neal], and [she]

[was] trying to help Detective Blakely."  (Id. at 210-12).

The prosecutor proceeded to ask Blackmon why she did not give Detective Blakely the

details on the morning she gave the written statement.  She responded that she gave him names,

and because the killers were on the loose that "scared [her] to death, just giving him the names of

the two people involved in doing this."  Blackmon also testified that her testimony at trial about what she saw and heard was the same as what she said made in depositions.  She changed her mind "to go ahead and do that after [her] first statement" because she was "not going to walk around [] scared for nothing, and [her] cousin dead for nothing."  She was "just going to take care of it, the best way [she] [knew] how."  (Id. at 212-13).  On further questioning, defense counsel and the prosecutor questioned Blackmon about her deposition testimony, specifically referring to the transcript of the depositions.  (Id. at 216-220).  After Petitioner was found guilty, defense counsel filed a motion for new trial, but the motion did not seek a new trial based on Blackmon's written statement.  (Resp. Ex. B at 61-71).

Although Petitioner raised the issue of Ground 3 in his post-conviction relief appeal (Resp. Ex. H at 19), the Missouri appellate court did not directly address it.  This Court will, therefore, review Petitioner's Ground 4 pursuant to a pre-AEDPA standard of review.  See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002).  Under a pre-AEDPA standard, Petitioner must demonstrate a "reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]."  Id. at 865-66.  As discussed above, Blackmon gave a plausible explanation for the differences between her trial and deposition testimony and the written statement she gave to Detective Blakely.  Under such circumstances, Petitioner has not established, even if Blackmon's written statement had been given to the jury in its entirety, that the outcome of his trial would have been different.   The Court finds, therefore, that Petitioner's Ground 3 is without merit.  See Robinson, 278 F.3d at 865.

**Ground 4:**   Petitioner claims counsel was ineffective for failing to challenge venire persons Susan Hubbard and Darla Carlyle.  (ECF No. 31 at 27-32).  As stated by the Missouri appellate court:

> During voire dire, venirewoman Darla Carlyle ("Ms. Carlyle") expressed concern about being chosen for the jury because she was the only employee in her office, but she also expressed the view that her boss would not hold such an absence against her.  When asked if the "experience of . . .  worrying about the job [would] cause [her] not to be able to listen to the evidence . . .  and not be fair [or] impartial," she replied, "[y]es, because [she is] very dedicated to [her] . . . work."  Later, when questioned about her beliefs in "guilt by association," she responded:  "I just feel like [if] they're all together, they're all doing the same thing."  She was then asked if she could comply with the trial court's instructions to be impartial and she replied, "I think in the back of my mind - -" before she was cut off by counsel.
>
> Additionally, during voire dire, venirewoman Susan Hubbard ("Ms. Hubbard") recounted that her father-in-law was murdered 27 years earlier, although he was not her father-in-law at that time.  She stated that the experience would not bother her in relation to her ability to serve on the jury.  When asked whether she would still be able to follow the instructions of the court and listen to the evidence, Ms. Hubbard responded," [p]robably, I cannot say for sure."  Later, when asked if any of the venire had "strong feelings for or against alcohol and drug use," Ms. Hubbard explained her father-in-law "was shot to death by teenagers who were on drugs an[d] alcohol, that might be a problem."  Both Ms. Carlyle and Ms. Hubbbard were unchallenged by counsel and both served on [Petitioner's] jury.
>
> [Petitioner's counsel] testified that he "missed" striking Ms. Carlyle and that such an error was a "screw-up."  Regarding Ms. Hubbard, he recalled she had a family member that had been a victim of violent crime and that she was "typically not the kind of person you'd want on a jury."  He related he "[m]issed" asking to have her stricken from the panel.  [Counsel] stated that he did apparently interrupt Ms. Carlyle during his questioning about her beliefs on guilt by association, and he "completely missed" asking her to be stricken from the panel.  Likewise, he acknowledged his failure to request to strike Ms. Hubbard due to her family history was "a compete oversight."

(Resp. Ex. K at 15-16).

The Missouri appellate court considered that a defendant has a right to a fair and impartial jury; a prospective juror can be excluded for cause only if her views would "prevent or

- 14 -

substantially impair the performance of [] her duties as a juror in accordance with the instructions and oath"; a juror's qualifications are not determined by a single response, "but are considered in the context of the entire examination"; and "[t]he relevant question is whether a venireperson's beliefs preclude following the court's instructions so as to 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." (Id. at 18).

The Missouri appellate court concluded that "Carlyle's responses about her work ethic illustrate[d] she was a committed employee, not that she was expressly biased or prejudiced against [Petitioner]. Likewise, her response to questioning regarding her beliefs about guilt by association was vague and non-specific." (Id. at 18). The court also considered Carlyle's response prior to being cut off from completing her answer by Petitioner's counsel, and concluded that her response "was not specific enough to show" she was biased. As for Hubbard, the Missouri appellate court considered her responses to counsel's questions. On finding Petitioner's claim without merit, the court further considered that "[p]rospective jurors often use such vernacular expressions rather than speaking in absolutes," and that the "positive affirmations from both venirewomen 'were consistently affirmative and [did] not reveal . . . uncertainty . . .' on their face." (Id. at 18-19). Citing Strickland, 466 U.S. at 694, the court concluded that it did not believe that there was a reasonable probability that, but for counsel's unprofessional errors, the result of Petitioner's case would have been different." (Id. at 19).

Federal law provides presence of a biased jury constitutes a fundamental, structural defect that affects the entire conduct of the trial. See Gray v. Mississippi, 481 U.S. 648, 668 (1987). The party seeking to strike a venire member for cause must show the prospective juror is unable to lay aside her impressions or opinions and render a verdict based on the evidence

presented at trial; to fail this standard, a juror must profess her inability to be impartial and resist

any attempt to rehabilitate her position.  See United States v. Dale, 614 F.3d 942, 959 (8th Cir.

2010).  Moreover, the decision to retain a juror is subject to the discretion of the trial court; if

there is a legitimate basis to retain a juror, there is no abuse of discretion.  See id.  This Court

finds, therefore, that the decision of the Missouri appellate court in regard to Petitioner's Ground

4 is not contrary to federal law and that it is a reasonable application of federal law to the facts of

his case.  See Williams, 529 U.S. 362.

**Ground 5:**  Petitioner claims that the prosecutor deliberately used perjured testimony of

Blackmon and Hunt.  (ECF No. 31 at 33-39).  In the appeal of his Rule 29.15 motion, Petitioner

claimed:

> the prosecutor did not correct Ms. Blackmon's and Mr. Hunt's trial testimony
> when in prior deposition testimony and trial testimony, Ms. Blackmon never
> testified that [Petitioner] had a gun in his hand, but at [Petitioner's] trial, Ms.
> Blackmon testified that she had no doubt that [Petitioner] was the only person
> holding a gun.  Further, in prior deposition testimony, [Mr.] Hunt testified that he
> did not see Mr. Robinson drop a gun before Mr. Neal was shot, but at
> [Petitioner's] trial, Mr. Hunt testified that he saw Mr. Robinson put the gun on the
> ground and [Petitioner] run past him with a gun.  Were it not for this prosecutorial
> misconduct, the outcome of the proceedings would have been different.

(Resp. Ex. H at 18).

Upon considering Petitioner's claim of prosecutorial misconduct the Missouri appellate

court held that freestanding claims of prosecutorial misconduct are generally not cognizable in

Rule 29.15 proceedings; such claims are cognizable only when fundamental fairness requires and

in exceptional circumstances; if the alleged conduct was apparent at trial, prosecutorial

misconduct is an issue for direct appeal; the prosecutorial misconduct alleged by Petitioner was

apparent at trial and was "not such a rare and extraordinary circumstance that it offend[ed]

notions of fundamental fairness"; and, therefore, Petitioner's claim was not cognizable pursuant

- 16 -

to Rule 29.15.  (Resp. Ex. K at 20-21) (citing <u>Tisius v. Missouri</u>, 183 S.W.3d 207, 212 (Mo. 2006) (en banc).  Likewise, under federal law prosecutorial misconduct is not cognizable pursuant to habeas proceedings.  <u>See</u> <u>Houser v. United States</u>, 508 F.2d 509, 515 (8th Cir. 1974). This Court finds, therefore, that Petitioner's claim of prosecutorial misconduct is not cognizable pursuant to federal habeas review.

**Ground 6:**   In Ground 6 Petitioner claims that his counsel was ineffective for failing to object to the State's eliciting Savage's and Blackmon's hearsay testimony.  Petitioner raised this claim both in his Rule 29.15 motion and in the appeal of the motion court's denial of his motion. (Resp. Ex. G at 104; Resp. Ex. H at 14-15).

Upon denying Petitioner relief based on the issue of Ground 6, the Missouri appellate court held:

> At trial, Mr. Savage testified that while he did not witness the shooting at issue, he was contacted by Ms. Davis and Ms. McGee about fifteen minutes after Mr. Neal was shot and they told him to go to the scene of the crime because his cousin had been injured.  He then related that he heard the day after the shooting that [Petitioner] and Mr. Robinson were responsible for shooting Mr. Neal.

> Ms. Blackmon testified at trial that she lived across the street from the location where Mr. Robinson ordered Mr. Johnson and numerous other people, including Mr. Neal, to get out of the van at gunpoint.  She related on the evening of the shooting she heard a commotion, went to the door, and witnessed the scene. She related she had a "good idea" who was in the van based on Mr. Robinson and [Petitioner's] being involved, and she knew [Petitioner]  and Mr. Neal had been involved in a fight on a previous occasion because she had talked to Mr. Neal about it.  Both the testimony of Mr. Savage and Ms. Blackmon was received into evidence without objection.

> It is well established that "[h]earsay evidence is testimony about a statement made by an out-of-court witness offered to show the truth of the matter asserted." <u>Kerr v. State</u>, 167 S.W.3d 809, 813 (Mo. App. 2005) . . . .  Yet, there is no need for this Court to engage in prolonged examination regarding whether the statements at issue were, in fact, hearsay statements.  This is because prejudice simply does not exist where the "allegedly hearsay statement was cumulative of properly-admitted evidence." <u>Elliott v. State</u>, 272 S.W.3d 924, 927 (Mo. App. 2009).

Here, Mr. Robinson testified at [Petitioner's] trial that [Petitioner] shot Mr. Neal in Mr. Robinson's presence.  Furthermore, both Mr. Savage and Mr. Robinson testified directly that [Petitioner] and Mr. Neal had gotten into a fight and [Petitioner] was knocked down and suffered a "broken lip."  The facts at issue in the testimony of Ms. Blackmon and Mr. Savage were cumulative to the evidence brought in through the testimony of other witnesses.  As a general rule the "[f]ailure to object to cumulative evidence cannot be the basis for ineffective assistance of counsel."  State v. Lawson, 876 S.W.2d 770, 780 (Mo. App. 1994).

(Resp. Ex. K at 13-15).

Likewise, under federal law, admission of hearsay evidence is not prejudicial where it is cumulative of properly admitted evidence, see United States v. Abrahamson, 658 F.2d 604, 607 (8th Cir. 1978), and counsel's failure to object to introduction of objectionable evidence is not prejudicial where the evidence is cumulative of other evidence proving the same proposition, see Still v. Lockhart, 915 F.2d 342, 344 (8th Cir. 1990).  The Court finds, therefore, that the decision of the Missouri appellate court in regard to Petitioner's Ground 6 is not contrary to federal law and that it is a reasonable application of federal law to the facts of Petitioner's case.  See Williams, 529 U.S. 362.

**Ground 7:**  Petitioner claims counsel was ineffective for failing to investigate promises of leniency to Johnson and Hunt.  (ECF No. 31 at 44-47).  Petitioner raised this claim in both his Rule 29.15 motion and the appeal of the motion court's denial of his motion.  (Resp. Ex. G at 103-104; Resp. Ex. H at 13).

Upon addressing the issue of Petitioner's Ground 7, the Missouri appellate court held:

It is clear that "[a]n attorney's failure to investigate and expose the bias of a witness who testifies favorably for the State can be grounds for an ineffective assistance of counsel claim under Rule 29.15."  Glasgow v. State, 218 S.W.3d 484, 490 (Mo. App. 2007).  "Claims of ineffective assistance of trial counsel based on a complaint that trial counsel completed insufficient investigation must allege the specific information the attorney failed to discover, that reasonable investigation would have disclosed that information, and that information would have been beneficial to the defendant."  Id.  [Petitioner], however, has failed to

- 18 -

adduce any evidence that either Mr. Johnson or Mr. Hunt had been promised favorable disposition by the State in exchange for their testimony.

Attorney Williams testified at the motion hearing that although he recalled that Mr. Hunt admitted at trial to having pending charge against him, he did not seek to discover who was representing Mr. Hunt in order to discover more information about Mr. Hunt's charges.   Likewise, regarding Mr. Johnson, Attorney Williams recalled that he also admitted to having pending charges against him, but Attorney Williams did not pursue discovering whether he was receiving leniency from receiving leniency from the State.   Attorney Willoughby's testimony echoed that of Attorney Williams.

Additionally at the motion hearing, George Gillmore ("Attorney Gillmore") testified that he represented Mr. Johnson in the criminal proceedings that were alluded to in [Petitioner's] trials.  He related he at one time spoke with the State about leniency on Mr. Johnson's behalf but the State "wouldn't give [him] any promises" and would not even discuss a plea bargain with him.  While he characterized the fact that eight of Mr. Johnson's nine charges were dismissed as "pretty unique," he related he had previously been told by the State that many of the witnesses in Mr. Johnson's case were not interested in testifying, and there was little evidence against him to justify pursuing all of the charges.

Here, [Petitioner] has failed to meet his burden of proving that by reasonable investigation his trial counsel would have been able to access information regarding leniency accorded Mr. Hunt or Mr. Johnson in exchange for their testimony against [Petitioner].  . . .  [T]here was no conclusive evidence presented by [Petitioner] at his evidentiary hearing that Mr. Johnson and Mr. Hunt actually *received* any sort of favorable disposition of their criminal charges for their testimony at his trials. [Petitioner's] allegations are conclusory and speculative.

(Resp. Ex. K at 11-13 (emphasis in original)).

The Missouri appellate court also noted that at Petitioner's first trial, Hunt testified he had multiple criminal charges pending against him; at Petitioner's second trial Hunt testified he had three pending Class A felonies for distribution of a controlled substance and, upon questioning by defense counsel, that he did not expect leniency on those charges due to his testifying against Petitioner; and that Hunt ultimately plead guilty to one Class B felony.  As for Johnson, he testified at Petitioner's first trial that he had numerous charges pending, and at

Petitioner's second trial he made no reference to his own criminal charges. (Resp. Ex. K at 12 n.6, n.7).

While under federal law counsel may have an obligation to adduce evidence that a witness had a cooperation agreement with the government which provided for leniency, see Strickland, 460 U.S. at 690-91 (counsel has a duty to make reasonable investigations or make reasonable decisions that makes particular investigations unnecessary); cf. United States v. Hodge, 594 F.3d 614, 618 (8th Cir. 2010) (jury has prerogative to credit or discount government witness's testimony based upon witness's cooperation), a habeas petitioner claiming such ineffective assistance must nonetheless establish prejudice as a result of counsel's failure to adduce evidence of a promise of leniency, see Anderson v. Bowersox, 262 F.3d 839, 841 (8th Cir. 2001) (habeas petitioner claiming ineffective assistance based on counsel's failure to cross-examine witness must show reasonable probability that outcome would have been different had counsel done so). Notably, Petitioner failed to show that Hunt or Johnson actually received leniency in exchange for their testimony. The Court finds, therefore, that the decision of the Missouri appellate court in regard to Petitioner's Ground 7 is not contrary to federal law and that the court reasonably applied federal law to the facts of Petitioner's case. See Williams, 529 U.S. 362.

## V.
## CONCLUSION

The Court finds that the claims raised by Petitioner in his § 2254 Petition are either not cognizable pursuant to § 2254 or without merit. Further, because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not grant a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir.1997).

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Petitioner in his § 2254 petition (ECF No. 31) is **DENIED**, and that the § 2254 Petition is **DISMISSED,** with prejudice;

**IT IS FURTHER ORDERED** that a separate judgment incorporating this Memorandum and Order shall issue this same date;

**IT IS FINALLY ORDERED** that the Court will not issue a certificate of appealability.

Dated this  21st  Day of November, 2013.

/s/ Jean C. Hamilton
UNITED STATES MAGISTRATE JUDGE